We'll now call case number 20-12513, Martin Forsyth v. University of Alabama, Board of Trustees. We have Mr. Gurrier for the appellant. Sir, you may begin when you're ready. I see you've reserved two minutes for rebuttal. Thank you, Your Honor. I am Charles Gurrier on behalf of What are the proper legal standards for evaluating claims of employment discrimination brought under the Rehabilitation Act of 1973? That question actually has two parts. One relates to what is the causation standard under the Rehabilitation Act in employment cases, and then how does the Rehabilitation Act and the ADA work together when dealing with selection criteria that screen out individuals with disabilities? Those questions, of course, require examination of the language of the statute. The second broad question focuses on whether or not summary judgment was appropriate in this case, focuses on the evidence in this case as to whether there was sufficient evidence in the record for a reasonable jury to conclude that Martin Forsyth was terminated because the University of Alabama regarded him as... Counselor, I think the legal issues you identify are very, very interesting ones, and I'm happy to talk about them, but there's one or two questions I have on the evidentiary side of things, on the element side of things. So as I understand the district court's order on the disparate treatment claim, so we're just talking about the disparate treatment claim right now, the district court found deficiencies on the regarded as, but also found there to be a legitimate business reason for the decision and no genuine issue of material fact that that legitimate business reason was pretext. As I read your brief, I don't see any discussion of there being error with regard to pretext. Am I missing something is my first question, and my second question is, if that's right, and there's an alternative basis for the district court's order that isn't addressed, must we affirm on that alternative basis, even though you might have some really good arguments on a legal issue with regard to causation? That question goes to really the heart of the evidence dealing with regarded as claim. When an employer acts in such a way as to indicate that an individual is regarded as disabled, or regarded as impaired, in this case, it's not clear that McDonnell Douglas, which is a circumstantial evidence standard, really would apply, because you've got evidence that would go straight to the motivation as being an unlawful motivation. Did you argue direct evidence at all? I don't recall any discussion of a direct evidence claim. We never described this as a circumstantial evidence or direct evidence claim. We basically argued that there is sufficient evidence to meet but for causation, which is what we must prove at trial. I understand. Please correct me if I'm wrong. You do more of this than I do. There are two buckets on these sorts of claims. There are direct evidence claims in which you do not need to go through the McDonnell Douglas burden shifting, or there's circumstantial cases in which you do. The district court here, and in your briefs, you argue about the elements of the prima facie case about McDonnell Douglas, and there's no discussion by anyone at all on direct evidence. Do I have that right, number one? Number two, if I don't have that right, tell me exactly what piece of evidence you would say is direct evidence of a regarded as Yeah, I don't believe we argued it as either a direct evidence or circumstantial evidence case. We did address the arguments that were made by the movement, which would have been McDonnell Douglas cases, the McDonnell Douglas case. But I think that the direct evidence of their motivation being based on being regarded as impaired are all the write-ups that led to his early disciplinary action. I understand, but there's no statement in the record that says, I think Mr. So-and-so is depressed, and we are firing him because I believe he is depressed. No, but there are statements that you need to interact better. You need to have better interaction. And those are inferential. Those aren't direct, right? Meaning you have to, there's an inference you have to make that gets you there. It's not a direct evidence as we've defined it, right? Right. So, and there would be an inference that they regarded as. Okay, so once we're there, we're in McDonnell Douglas. And as I understand the district court's order, going back to my original question to you, the district court ruled on the prima facie case and some elements, and you've made arguments on that. And then what the district court said is, even assuming they've made a prima facie case, the university has offered a legitimate business reason. And I find that there's no genuine issue material fact on pretext. My question to you is, is there anywhere in your brief where you argue that that conclusion is incorrect? And if not, aren't we required to affirm? I think we argued with regard to pretext that the evidence is the same conduct at the time that Mr. Forsythe was terminated. We're not terminated. And that is evidence of pretext. Can you show me, I have your brief right in front of me. I have both your briefs, but, or your blue brief, but can you show me where in your blue brief that the word pretext appears in the argument section? I may not have used the word pretext, your honor. And what I was focusing more on is the type of analysis. Well, one, I was focusing on the type of analysis that is done in Lewis that says, if you can't meet the comparator standard to meet the McDonnell Douglas standard, it's still relevant evidence to show pretext or to show disparate treatment. And that's what we are trying to demonstrate is even if you can't show McDonnell Douglas, there is evidence of disparate treatment sufficient to survive summary judgment. And then again, McDonnell Douglas is a theory. It's not a claim. Okay. Let me, let me, let me ask you, I want to fast forward a little bit to the disparate impact claim. Again, you make very interesting arguments and we could, I want to give you an opportunity to talk about them, about whether the rehab act under the, the adopting standard clause brings in the ADA disparate impact. But I want to assume for the moment that it does and ask you a couple of questions about the claim. What specific employment practice did you allege or argue in summary judgment, what disparately impacted those like your client? It was the applet. It was the evaluation of Mr. Port sites performance based upon a, a perceived impairment. That's not an, that's not a specific policy though. That's, that's something that happens specifically to your client, but that's not a specific policy. What policy of the university did you specifically identify to the district court as being something that, that caused a disparate impact on those like your client? I don't believe we've identified a specific policy other than that, their evaluation system. It's a, it's an evaluation standard. They used the evaluation standard as to him. And that, that only has to apply to him. But if we, if we adopt the ADA, if we adopt any disparate impact from the ADA, hasn't every single disparate impact case in the ADA context required a identification of a specific employment practice and be a group wide impact, not just an impact on your client, but an impact on the dis on those with disability. Certainly numerous cases have, but there's nothing in the way the statute is written that talks about individuals that draws a distinction. Here's the problem. Here's the problem. And your opposing counsel pointed out this irony. I noted it too. On the one hand, you want to bring in all the standards through the, through the word standard, you want to dump in the entire ADA, including a disparate impact claim. And then when they say, well, this we're going to black team requires you to prove a group that more than just my client was impacted by a specific policy, a specific employment practice. You then say, Whoa, Whoa, Whoa. Well, the, the, the rehab act only applies to individuals that references individuals and only applies to my client. It seems to me, you can't have it both ways. In other words, you can't have a disparate impact claim that's ADA based and then discount the exact elements of an ADA disparate impact claim. Well, but the statute says the ADA says using qualification standards, employment tests, or other selection criteria that screen out, or tend to screen out an individual with a disability or a class of individuals with disabilities. Right. So now if it's, if your client was screened out, that's a disparate treatment claim. And if it's, and if it's a class, it's a disparate impact claim. It impacts more than just your client. Well, I think the EEOC who's interpreted the statute and others have used the subsection B six to label them as disparate impact claims, but they're a disparate impact claim as to either the individual or a class. If you want to call, well, let me ask you this. Let me ask you this. Tell me any circuit court case in the country that has interpreted a rehab claim meaning taken the ADA framework for disparate impact through the rehab act and has done, has an analyzed disparate impact claim similar to have you, you have analyzed it. I don't believe so. None. I believe that is a novel issue on this. I would point out, of course, that in, in Wolf versus the postmaster general 11th circuit case here for ADA federal appendix four 65 2012. This circuit recognized that all of the ADA amendments, including the regarded as amendments to the ADA were incorporated into the rehab act. And, and, and they've never said in, in dealing with the incorporation question have never said we're going to incorporate some of the provisions of the ADA into the rehab act and not others. In fact, the incorporation amendment to the rehab act specifically references all of title one under the rehab act or under the, under the ADA and for specifically say in sections 12, one, one, one at SAC. And then also as those from title five, the, the argument that the is that even though the amendments to seven 94 D says we're basically going to make the rehab act and the ADA consistent across the board, we're incorporating in employment cases. Every ADA standard uses standards, plural that no, they're going to pick and choose. We want you to use the title seven standard over here, which of course is the subject of a separate 1991 amendment dealing with disparate impact claims and how you prove it. We don't, we want you to use that over here and we don't want you to use the causation standard here. And that can't be right. I think the confusion that has arisen, we discussed it in our brief is that, well, I think Pritchard pretty much established generally that the ADA standards in the rehab act standards are the same in employment settings. Later cases have caused confusion in that by carving out a causation standard as if it's not a standard. I think the Bostock decision from last term, I think helped clarify all that. And particularly going back to your question about pretext, that the whole McDonnell Douglas test as applied in the 11th circuit focuses on what's the one true standard. Case after case keep saying McDonnell Douglas is the, what's, what's the one true motivation, the one true cause. Bostock makes it clear that's not, there could be multiple causes. And we believe in this case, the evidence is sufficient for a jury to say, yeah, there may be some concern about was he on breaks or taking time, but there's also evidence that they regarded him as impaired. And that's also a, but for a positive, the action and a jury could conclude that Mr. Foresight was discriminated against because they regarded him as impaired. We believe this case should be reversed. The court should hold that the standards and employment cases and that the rehab act are exactly the same as the ADA for all sections of title one, and that the evidence is sufficient to sustain and survive some rejected. Thank you. Thank you, Mr. Dykes. Good morning and members of the court council, Mr. Greer. My name is Toby Dykes. I represent the University of Alabama Board of Trustees. The University of Alabama discharged the plaintiff because supervisors caught him taking unauthorized breaks while at work and he lied about it. They must now decide whether the district court properly granted summary judgment on plaintiff's two rehabilitation act claims. One based on disparate treatment, the other grounded on disparate impact. The disparate treatment claim fails because the plaintiff failed to present a prima facie case of discrimination. And because he didn't provide evidence to rebut the university's non-discriminatory reasons for his discharge. The disparate impact claim fails because first that is not cognizable under the rehabilitation act. And because alternatively, he wholly failed to produce any evidence on this claim. This court should affirm the district court's carefully reasoned summary judgment decision. I want to talk first about the disparate treatment claim. The district court determined that the plaintiff's disparate treatment claim failed at each step of analysis. As such, this court can affirm the district court's judgment on the disparate treatment claim for multiple reasons. The plaintiff's brief focused primarily on changing the causation standard from solely to but for. But that's not the only basis to affirm this decision. First of all, I want to talk about the lack of rebutting the university's non-discriminatory reason as Justice Locke was asking about. There was no argument to show pretext. The university presented a legitimate non-discriminatory reason for firing the plaintiff. It fired him because he was caught taking unauthorized breaks and that he was discovered on camera entering a private break room. He had keys to the break room. He was caught on camera taking unauthorized breaks outside the break room and then he lied about it. Two other folks did the exact same thing and they were fired. Those reasons are not discriminatory. As such, the plaintiff, even if he could prove a prima facie case, then had to rebut the contentions for his discharge and provide some evidence that a jury could conclude that disability discrimination was the reason for his discharge and he failed to do that. Instead, what he has shown is that he had interpersonal conflicts with his supervisors. He specifically testified that Neil Teixeira had been waging a personal battle against him since September of 2010, which was when he first reported safety concerns about his presence. This court does not wade into employment disputes and discrimination. It does not require co-workers to get along. At bottom, there is no evidence the university fired the plaintiff because it regarded him as suffering from depression or anxiety. I want to turn next kind of going back to the prima facie case because the district court properly found that the plaintiff could not prove a prima facie case of discrimination. This case has been and it always will be a disability case without a disability. In fact, the plaintiff no longer claims he was actually disabled. Instead, his sole claim is that the university regarded him as being disabled, which is ironic because during the time frame that the university was allegedly discriminating against him because it regarded the plaintiff as asking this court to require supervisors to diagnose employees' mental impairments, which is impractical and would render employers unable to discipline employees. Let me ask you a question about that. I think that's a good point. One of the things I was trying to find in the record is really any evidence that the university or the employer knew about his disability, about his impairments. Could you talk about that? I mean, is there anything in the record that would suggest that they even knew that he had these impairments? The only thing in the record that would show that, your honor, would be the plaintiff testified he told David Marlow, who was his direct supervisor but not a decision maker, that he was going to EAP for depression. EAP is something that the university provides to employees, is that correct? It is. It's a service for employees if they need somebody to talk to because they're having financial issues, marital issues, mental things they want to talk through. It is not a counseling service for mental impairments. It is a service that is offered for folks if they need to there's a suggestion that anybody that would use the EAP program suffers from a disability. I assume that the university doesn't have that program with the expectation that only people with recognizable disabilities would use it. Most definitely not, your honor. It's there to help its employees. If you can't have a program like that to help employees because they might be perceived as being disabled, it limits the university's ability to assist employees if they Let me ask you this. If we were to say that on this record that there just isn't sufficient evidence that the university knew about his disability, does that get rid of all the claims or do we still have to potentially address the disparate impact claim? It obviously would definitely get rid of the disparate treatment claim. I looked to see if there were any cases that, because I questioned whether or not you can have a regarded as claim under the disparate for disparate impact because then it's really focused more on a supervisor's interpretation of a policy than it is a blanket policy that's applied across the board. But I could not find any cases that do that. But your honor, I do think if he's not arguing that he's actually disabled and if the record shows that was not regarded as disabled, then I don't think he has a disability to support a disparate impact claim. Kind of turning back to the regarded as claim, what the plaintiff's brief focused on is interacting with others, which is a major life activity. The plaintiff's brief is lacking in evidence that he was regarded as having actual mental impairment. In the cases that he cited to show that same challenge. He cites to McClendon, which is a Ninth Circuit case, but in that case there was no dispute that the plaintiff had an anxiety disorder, which was the mental impairment. The question was whether or not it impacted the major life activity of interacting with others. Shock was another case that he cited to, and in that case, the mental impairment was bipolar disorder. Then there was a question of whether or not it impacted the major life activity of interacting with others. And in Jacobs, there was an impairment of social anxiety disorder. In this case, to prove a regarded as claim, he must show he was regarded as having a mental impairment, which would be depression or anxiety, not that he was regarded as impacted in a major life activity. They can't be the same thing. And here he is not presented evidence he was regarded as having a mental impairment. He wants to impose, as I've mentioned before, a requirement that the supervisors diagnose his condition and make the inference that because he might not work well with other people, he might be angry on occasion. That means that he has a mental impairment and is depressed. And that is illogical. It is impractical. It is not required under the law. And it would place a supervisor in the untenable position of never being able to discipline somebody because they can be later be alleged that that person was being disciplined for a sign that was a symptom of some sort of mental impairment. Or of assuming that they have a supervisor in a position that you have to assume that a difficult employee is somehow there's something mentally wrong or they have mental disease of some sort. Yes, your honor. You said that much better than I did. Was there any evidence that that the so as I understand the claim, the regarded as claim, it's that the the supervisors thought he was difficult. He didn't comply, didn't work well with others, didn't look people in the eye. He didn't want to talk to people. Was there any that those things are connected to depression either through expert evidence or something that everybody commonly knows that this this symptom is related to this specific mental illness? Anything like that? No, your honor. And I think the middle district of Alabama addressed that well, because it's essentially asking the supervisor to diagnose somebody's depression. And it wasn't a regarded as case. But in Rogers versus CH2M, which is cited in our brief, the court explained, there are certainly other mental illnesses where the symptoms are such that an employer may be put on notice. This court comes close to believing it to be impossible for this ever to be proven in the case of depression or anxiety. However, simply put, the ADA doesn't require clairvoyance. Employer would probably never be held to have imputed knowledge of a depression or an anxiety disorder of its employee, asking the employer to get that such as asking too much of the employer and of the ADA. So I think in this case, asking the supervisors to essentially diagnose a mental impairment of depression is impractical. So for that reason, in its own, we believe we can't prove a prima facie case and the district court was probably right, properly decided the case. We also, as I've already argued, it's not shown pretext. The other argument is whether the causation standards should change from solely to the plaintiff points to the second circuit for that argument. And the second circuit is the only... If I could stop you though, counsel, and I want you to make the argument, but you agree though, if we agree with you on the regarded as or that pretext wasn't raised on appeal, that we don't have to decide the causation issue. Yes, your honor. That's exactly right. Let me ask you this. Do you read Ellis as us having decided the causation issue? I do. I think Ellis is very clear. The plaintiff points to it as more as dicta, but the issue in that case was the causation standard. And then we applied the solely as standard as the causation standard. Applied the solely standard. Yes. We believe that the circuit to continue to follow that prior precedent and... Well, this panel doesn't have a choice one way or the other, right? Right. Yes. I would assert that. Yes, your honor. So I think for all these reasons, we assert the district court properly dismissed the disparate treatment claim. The disparate impact claim. And today was the first time I really felt that I had a full understanding of what policy was allegedly the neutral policy at a disparate impact. And again, it's argued that it's only a disparate impact on the plaintiff. Without getting to whether or not a disparate impact claim is cognizable under the Rehabilitation Act, which we assert the district court properly found. If you find that it is cognizable under the standards of the ADA, this court has laid out those standards are. And this was done in Smith versus Miami Dade County from 2015, which is a disparate impact claim under the ADA. In that case, the court explained a plaintiff must provide comparative evidence showing that a policy has a disparate impact on the disabled. The court continued, it is not sufficient to show that a few people are affected by a policy. Specifically, the court found that plaintiff's argument that she was adversely affected by the no rehire policy is insufficient and does not show a significant discriminatory effect on disabled individuals as a group. Smith is an unpublished case, though, right? It is an unpublished. But I think that there's not a case in the 11th Circuit or in the country that has allowed a disparate impact claim to proceed on behalf of one person being the only person impacted. So here at best, he's argued that there is a policy that evaluates performance that impacted him. And that's not what the basis can be for a disparate impact claim. So we believe the district court properly found he did not provide evidence to support a disparate impact claim. We also believe the court properly found that a disparate impact claim cannot be maintained under the Rehabilitation Act and looked at Doe from the Fifth Circuit, which is outlined in our brief. But this court to make a finding on the disparate impact claim does not need to even address whether or not it is cognizable under the Rehabilitation Act. That was done in Burr where the court assumed without deciding that a disparate impact claim was cognizable and then found the plaintiff could not prove the claim. So either way, we believe the district court properly. The Supreme Court is also going to be deciding this issue, right? I believe. Yes, I think that I think that I know that there has been in show from several years ago. It left. Didn't they take cert in a Ninth Circuit case addressing this very issue? I know that there was a Ninth Circuit case that came yesterday that that touched on this issue. I don't know if that if the Supreme Court. Has issued cert on that or another Ninth Circuit case. I understand it's CVS Pharmacy versus Doe. That's fine. Thank you. Sorry about that. But for these reasons, Your Honor, the district court properly granted summary judgment. And we ask that you all affirm the district court's decision. And I thank you very much for your time today. Thank you, Mr. Greer. You have two minutes left and I just want to start out by asking you. So we do have a published case Schwartz versus City of Treasure Island from 2008 that contains the quote that Mr. Dykes referred to quote. It's not enough to show that a few people are affected by a policy. Rather, disparity must be substantial enough to raise an inference of causation for a disparate impact claim. But what's your response to that? How have you shown that I'm not fully familiar with that case, but I think that was a public accommodation case that you had that non-employment case. Well, I'm not sure about that, but explain your explain what happens is. Because of the way that we have that operates, that if it's not an employment setting, you've got to look at the Rehab Act law because the Rehab Act applies anywhere there's federal financial assistance. So Schwartz was a fair housing case. Yeah, it was a fair housing act. So the 794D that incorporates the ADA standards would not have been applicable in that fair housing act case because it wouldn't have been an employment case. Would have been under a different provision. So it doesn't answer that question. But Smith was an ADA case. It was an ADA case. I think that that analysis, again, is not necessarily required because of the way the ADA is written and these impact, if you will, call it section of the statute specifically says standards that discriminate against an individual because of disability or a class of individuals. The statute in Congress clearly meant there has to be disparate impact claims that impact only one individual. And part of that is because disabilities vary so greatly, you may not have more than one or two people with a particular condition that could be screened out. And that's why the EEOC has taken that position. I would like to, in the little time I have, I'd like to address some of the issues that were raised. Judge Brasher, I do not believe with regard to whether or not the employer knew about Mr. Forsythe's disability. One, a regarded as claim is based upon the fact that the employer believes somebody has an impairment, not a disability, an impairment, even if that person doesn't have an impairment or a disability. And Mr. Forsythe doesn't have to prove that his impairment, that he had an impairment. Two, that they knew about what he thought about himself. All of that is irrelevant. The focus is on the employer, why they acted, and did they act in part because they believed he had a mental impairment. Now, interacting with others, the cases we cited under the pre-2008 amendment said interacting with others was a major life activity, which meant you could prove a disability if you were unable to interact with others. That's a much higher standard. We believe the evidence is sufficient to meet that standard in this case, but we don't have to meet that. All we have to show is they regarded him as impaired. And while they say he was rude, they never use that language when they criticize him. They talk to him as, he doesn't look me in the eye. He doesn't respond properly. All of that regards that they believe he had an impairment. It would be mental, not physical. And that was their vision of what they did. What do you say to the concern that we raised with Mr. Dykes that like, if these kinds of things didn't look me in the eye, was rude, you know, use the employee assistance service. If these kinds of things suggest that the employer viewed someone as impaired, then the employer can never really fire anybody for any reason, because you could always, you essentially be required to treat them as if you thought that they were impaired. It does not require them to be psychiatrists to diagnose it. What it requires them to do is make certain when they're evaluating something, someone they're not evaluating characteristics that could be indicators of impairments. The statute has been around for quite a long time. At the university, it provides substantial training to their employees on how to comply with the law. In this case, Mr. Forsyth frequently went to the HR department saying, I think they're treating me incorrectly. Now, he doesn't know what they're thinking, but the HR department should know whether or not they're evaluating him on performance, which a number of times HR said, you're not evaluating him on performance, nothing wrong with his work, showing up on time. It's all about, you're not getting along with people. In fact, they went so far in HR and says, you can't make him read a book about how to improve yourself. That's not permissible. HR departments know what to tell people to do. The problem is in this case when Mr. Forsyth kept focusing on, look what they're doing to me. They're treating me this way because of the way they're saying I'm not interacting properly. At one point, HR laughed at him and said, well, here's another one of these things, but no thanks. We think the evidence is sufficient that looking at what they were thinking and what they put in writing in their evaluations, he's not being asked to diagnose him with depression. The question is, does those writings and those performance evaluations indicate that they were evaluating him because they believe he was impaired? Finally, as to the pretext question, I think again, Bostock- We need for you to wrap up, Mr. Greer. I will. As to the pretext, Bostock says, even though there was this other event, this supposedly stealing times, there can be multiple but-for pauses for an event and that we need not prove sole cause. The university's argument essentially is because there was also some other reason that could have led them to terminate him. That was the sole reason when there's sufficient evidence to show an additional but-for cause was they regarded him as disabled. Thank you for your time. Thank you, counsel. Court will be adjourned until 9 a.m. Central time tomorrow morning.